UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT HARPER,

    Plaintiff,

v.

AMAZON.COM SERVICES INC., *et al.*,

    Defendants.

Civ. Action No. 19-21735 (FLW)

OPINION

**WOLFSON, Chief Judge**:

  Plaintiff Robert Harper ("Plaintiff") filed this action against Defendant Amazon.com Services, Inc. ("Defendant" or "Amazon"), alleging that Defendant (i) misclassified him and other similarly situated New Jersey Amazon Flex drivers as independent contractors, rather than employees; and (ii) failed to remit minimum wage and overtime compensation, as well as customer tips, in violation of various New Jersey wage labor laws. In addition, Plaintiff asserts a civil conversion claim against Defendant and seeks an award of punitive damages. Defendant moves to dismiss the Amended Complaint and compel arbitration under the Federal Arbitration Act ("FAA"), arguing that the arbitration clause in a contractual agreement that the parties executed is binding upon Plaintiff; in the alternative, Defendant contends that Plaintiff should be required to arbitrate this dispute under Washington or New Jersey arbitration statutes. Defendant also moves to strike Plaintiff's request for punitive damages in the Amended Complaint. For the reasons set forth below, Defendant's motion is **GRANTED** in part and **DENIED** in part as follows: (i) the motion to strike punitive damages is **GRANTED**, and (ii) the motion to compel arbitration is **DENIED** without prejudice. Defendant may again move to compel, if appropriate,

after discovery on the issue whether Plaintiff falls within the transportation worker exemption set forth in § 1 of the FAA.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Unless otherwise noted, the following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for the purpose of this motion. Amazon offers various products that customers can purchase on a nationwide basis through Amazon's website or a smartphone application. Declaration of Manuela Ajayi (dated January 24, 2020) ("Ajayi Dec."), ¶ 4; Amended Complaint ("Am. Compl."), ¶ 21. Amazon contracts with individual drivers ("Amazon Flex Driver(s)") through a smartphone application program called Amazon Flex, who use their personal vehicles to deliver the products that consumers purchase from Amazon. Ajayi Dec., ¶ 5.

On April 24, 2019, Plaintiff registered to work as an Amazon Flex Driver through the Amazon Flex application. *Id*. ¶ 13. To sign up, Plaintiff was required to download the application on his smartphone, create an account, and accept the "Amazon Flex Independent Contractor Terms of Service" ("Terms of Service") after twice clicking on a button that read "I AGREE AND ACCEPT." *Id*. ¶ 6. Prospective Amazon Flex drivers, like Plaintiff, could not agree to the Terms and Conditions page without first scrolling to the bottom of the agreement on the Amazon Flex application.

The first page of the Terms of Service contains a section in capital letters indicating that the agreement contains an arbitration provision: "YOU . . . AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN INDIVIDUAL BASIS THROUGH **FINAL AND BINDING ARBITRATION**, UNLESS YOU OPT OUT OF ARBITRATION WITHIN 14 CALENDAR DAYS OF THE EFFECTIVE DATE OF THIS AGREEMENT[.]" *Id.* ¶ 6, Ex. A

(emphasis in original). Section 11 of the Terms of Service sets forth the arbitration agreement in full, requiring the arbitration of all disputes arising from the prospective driver's relationship with Amazon:

> SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES

*Id.*, Ex. A, § 11(a).

Section 11 of the Terms of Services also includes a class waiver which requires all Amazon Flex Drivers to arbitrate potential disputes against Amazon on an individual basis: "ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS . . . . THIS AGREEMENT DOES NOT PROVIDE FOR, AND THE PARTIES DO NOT CONSENT TO, ARBITRATION ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS." *Id.*, Ex. A, § 11 (b)(e). The Terms of Service further provide that, "NO ARBITRATOR SELECTED TO ARBITRATE ANY DISPUTE BETWEEN THE PARTIES IS AUTHORIZED TO ARBITRATE ANY DISPUTE ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS. *Id.*, Ex. A, § 11(f).

The Terms of Service state that the FAA and federal law govern the arbitration agreement in Section 11: "[t]he parties agree that the Federal Arbitration Act and applicable federal law will govern any dispute that may arise between the parties." *Id.*, Ex. A, § 11(j). In addition, the agreement includes a section entitled "governing law," which provides that Washington law is

applicable to the remaining provisions: "[t]he interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of law principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law." *Id*., Ex. A, § 12. A survival clause is contained in Section 16 of the Terms of Service, stating that "[i]f any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present . . . ." *Id*., Ex. A, § 16.

Above the "I AGREE AND ACCEPT" button, the Terms of Service explain that Amazon Flex Drivers are permitted to submit a one-sentence email within two-weeks from the date of acceptance, to opt out of the agreement's arbitration provision. In particular, the Terms of Service state: "WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. If you wish to opt out of this arbitration agreement—meaning, among other things, that you and Amazon would be free to bring claims against each other in a court of law—you can opt out by sending an email to [Amazon]." *Id*., Ex. A, § 11(k). Plaintiff did not choose to opt out of arbitration.

On April 24, 2019, Plaintiff clicked on the "I AGREE AND ACCEPT" button two times.[1] On the first occasion, Plaintiff clicked on the button to accept the Terms of Service, after scrolling through the entire agreement. *Id*. ¶¶ 8-9, 13. Afterwards, Plaintiff was required to click on the I "AGREE AND ACCEPT" button again, to indicate his acceptance to the arbitration provision of the Terms of Service, located on its first page and in Section 11. *Id*. Notwithstanding his acceptance of the Terms of Service and the agreement to arbitrate, on

---

[1] Plaintiff contends that Defendant has not submitted a signed Terms of Service Agreement, but he does not dispute that he could not have registered to work as an Amazon Flex Driver, without having first agreed and accepted the terms of the contract, including the arbitration clause in § 11.

4

November 13, 2019, Plaintiff filed the instant action against Defendant in the Superior Court of New Jersey, Mercer County.

On December 20, 2019, Defendant removed the action to this Court on the basis of diversity jurisdiction. On January 7, 2020, Plaintiff filed a First Amended Complaint ("Amended Complaint" or "FAC"). In the FAC, Plaintiff alleges that Defendant misclassified him and other New Jersey Amazon Flex Drivers as independent contractors, failing to provide overtime compensation, in violation of the New Jersey Wage Payment Law ("WPL") and the New Jersey Wage and Hour Law ("WHL"). Plaintiff also asserts a civil conversion claim against Defendant, and seeks an award of punitive damages. In the instant matter, Defendant moves to dismiss the FAC, arguing that federal and state law require Plaintiff to arbitrate his labor-related claims. Defendant also moves to strike Plaintiff's request for punitive damages in the FAC. Plaintiff opposes the motion.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA was designed by Congress "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536-37 (D.N.J. 2013) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). In achieving this end, the FAA provides that contract provisions containing arbitration clauses "shall be binding, allows for the stay of federal court proceedings in any matter referable

to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." 9 U.S.C. §§ 2-4. As a whole, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). In that connection, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id*. (*Mercury Constr. Corp.*, 460 U.S. at 24-25).

Federal law presumptively favors the enforcement of arbitration agreements. *Id*. Nevertheless, when a district court is presented with a motion to compel arbitration, it must answer the following two questions, in the affirmative, before compelling arbitration pursuant to § 4 of the FAA: "(1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement." *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). To do so, district courts implement "ordinary state-law principles that govern the formation of contracts," *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (quotations and citations omitted), and, "when determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co*, 584 F.3d at 524 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986)).

When the residual clause of § 1 of the FAA, which excludes "transportation workers" from the scope of the statute, is in question on a motion to compel arbitration, the Third Circuit has explained that a court must first determine that the exemption is not applicable, "before

making an order that the parties proceed to arbitration pursuant to §§ 3 and 4 of the FAA." *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217 (3d Cir. 2019) (citing *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019)). In conducting such an examination, the Third Circuit has instructed that a "restricted inquiry" may be required. *Id*. Indeed, according to the Third Circuit, "where the issue of whether the residual clause of § 1 of the FAA applies arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue." *Id*. However, "where those documents do not, or the plaintiff responds to the motion with additional facts that place the issue in dispute," the Third Circuit has explained that "'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing . . . ,' with an application of the summary judgment standard to follow." *Id*. (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)).

**III.   ANALYSIS**

    **A.   Section 1 of the FAA**

As a threshold issue, the parties dispute whether Plaintiff is exempt from the FAA's coverage.[2] Defendant, on the one hand, argues that Plaintiff was contracted to provide nothing more than "local" services. Defendant's Motion to Compel ("Def.'s Motion"), at 16, 20. In his role as an Amazon Flex Driver, Defendant contends that Plaintiff "pick[ed] up goods, such as groceries," from "local warehouses or stores," and transported the merchandise to neighboring customers who lived in the area. *Id*. at 20. Therefore, Defendant maintains that, because Plaintiff

---

[2]  In response to Defendant's motion to compel, Plaintiff does not dispute that the Terms of Service contain a valid and binding arbitration provision, or that the instant dispute falls within its scope. Rather, Plaintiff contends that the parties' agreement is exempt from the FAA's coverage, because he crossed state lines and engaged in interstate commerce as an Amazon Flex Driver.

7

worked in "local markets," he did not engage in foreign or interstate commerce within the meaning of the FAA. However, Plaintiff disputes Defendant's characterization of his work responsibilities, as he contends that he did not only perform local deliveries, but he was also required to transport consumer products "across state lines," between New Jersey and New York. Plaintiff's Opposition. ("Pl.'s Opp."), at 8. Therefore, in performing these services for Amazon, Plaintiff argues that he "engaged in interstate commerce," and that his arbitration agreement with Defendant is exempt from the FAA.

Pursuant to the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" shall be valid and enforceable. 9 U.S.C. § 1. Nevertheless, § 1 of the FAA, which is commonly referred to as the residual clause exemption, provides, in pertinent part: "but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id*. In construing the scope of § 1's exclusion, the Third Circuit has held that, pursuant to the rule of *ejusdem generis*,[3] the residual clause of this provision includes those classes of workers "'who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it.'" *See Singh*, 939 F.3d at 220 (quoting *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, (U.E.) Local 437*, 207 F.2d 450, 452 (3d Cir. 1953)).

---

[3] "The '*ejusdem generis*' rule is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things in the same general kind or class as those specifically mentioned." *United States v. Walasek*, 527 F.2d 676, 679 (3d Cir. 1975).

Recently, in *Singh*, the Third Circuit had the occasion to interpret the language of the FAA's residual clause exemption.[4] In that case, the plaintiff, an Uber driver who provided passenger transportation services, alleged that he was misclassified as an independent contractor and owed additional wages. *Singh*, 939 F.3d at 214. In response to the class action suit that followed, Uber moved to compel arbitration. In so doing, Uber argued that, prior to rendering his transportation services, the plaintiff entered into an agreement though Uber's smartphone application, which contained a valid arbitration clause. The plaintiff, however, averred that Uber could not enforce that provision, because he fell within the residual clause exemption of § 1 of the FAA. *Id*. In support of his position, the plaintiff emphasized that he engaged in interstate commerce, because fulfilling his work obligations required him to transport passengers across state lines. *Id*.

In addressing the parties' dispute, the Third Circuit applied a "textual approach to the residual clause of § 1," before explaining that this provision "suggests that it extends to both transportation workers who transport goods as well as those who transport passengers." *Id*. at 222. The Third Circuit then examined whether the plaintiff was a transportation worker who engaged in interstate commerce, within the meaning of the FAA's residual clause exemption. That question, the Third Circuit concluded, required a fact-intensive examination that could not be performed on a motion to compel arbitration, because the pleadings were insufficient to determine if the plaintiff engaged in interstate commerce under the FAA. Therefore, the Third

---

[4] Defendant contends that, in *Singh*, the Third Circuit "declined to resolve the question of whether local drivers," like Plaintiff, "fall under the Section 1 exemption." Def.'s Motion, at 19. But, while Defendant characterizes Plaintiff as a "local driver," as further discussed below, the issue whether Plaintiff engaged in interstate commerce is in dispute. Indeed, in his pleadings, Plaintiff alleges that he delivered goods across state lines. These factual allegations contradict Defendant's contentions with respect to the purported localized nature of Plaintiff's work obligations.

Circuit found that the exchange of discovery was required on various matters that related to the plaintiff's obligations as an Uber driver, before ruling on whether he fell within the FAA's residual clause exemption. *Id*. at 226-28.

As in *Singh*, I cannot determine whether Plaintiff is a transportation worker who falls within the FAA's residual clause exemption, at this stage of the litigation. The Third Circuit has explained that a district court should consider "various factors," including, for example, the following list of non-exhaustive resources and materials: "the contents of the parties' agreement(s), information regarding the industry in which the class of workers is engaged, information regarding the work performed by those workers, and various texts—*i.e.*, other laws, dictionaries, and documents—that discuss the parties and the work." *Id.* at 227-28. Indeed, no single factor is dispositive of the residual clause exemption determination, such as, for example, the "localized nature" of the work in dispute. *Id*. at 227 (explaining that, in conducting a residual clause examination determination, a district's court's analysis need not "hinge on any one particular factor."). Rather, the Third Circuit has advised that the relevant examination can be "informed by various" considerations. *Id*. at 227.

Here, at the outset, I note that Defendant moves to compel the arbitration of this dispute, without addressing each of the factors set forth in *Singh*. Rather, Defendant's arguments are centered on Plaintiff's purported intrastate activities, which is not dispositive of the residual clause determination. *See id*. (noting that the residual clause determination need not "hinge on any one particular factor, such as the local nature of the work."). In that connection, according to Defendant, Plaintiff "signed up" to work as "a local" driver who picked up goods from Amazon's warehouses, before transporting them to various consumers who lived in the area. Def.'s Motion, at 5; Ajayi Dec, ¶ 5. In a similar vein, Defendant emphasizes the localized nature

of Plaintiff's transportation services, and maintains that he could not have engaged in "foreign or interstate commerce" as an Amazon Flex Driver. *Id*. However, the support that Defendant provides for these contentions includes a certification from Manuela Ajayi, a Director at Amazon. *See* Ajayi Dec. This certification falls outside of the scope of what this Court can consider on this motion, in determining Plaintiff's exempt status under the FAA. *See Singh*, 939 F.3d at 226 n.10 (refusing to compel arbitration, even where the defendant argued that its business operates on "a localized, city-by-city basis[,]" because the defendant's supporting certification was "beyond the scope of what a court may consider" on a motion to compel). At best, this certification creates a dispute of fact. Indeed, in his Amended Complaint, Plaintiff includes factual allegations that contradict Defendant's assertion as to the work he performed for Amazon.

In his pleadings, Plaintiff alleges that he engaged in interstate travel as an Amazon Flex Driver: "Plaintiff and other class members retrieved packages from Amazon warehouses located in the state of New Jersey. Plaintiff and other class members delivered those packages to locations in the [s]tate of New Jersey and across state lines to locations in the State of New York." Am. Compl., ¶ 34(a)-(b). Plaintiff's allegations are sufficient to create a factual dispute that precludes this Court from compelling arbitration. *See Singh*, 939 F.3d at 226 (refusing to compel arbitration where the plaintiff submitted a certification in which he stated that his transportation services required him to travel across state lines, and finding that a factual dispute existed as to the plaintiff's exempt status under § 1 of the FAA's residual clause exemption). However, on this scant record, it is inappropriate to determine if the residual clause exemption in

§ 1 of the FAA applies, based on the pleadings, alone.[5] Indeed, in the Amended Complaint, Plaintiff neither alleges, nor provides an estimation of, for example, the number of times that Amazon Flex Drivers have transported goods across state lines, in comparison to the total amount of deliveries that have occurred nationwide. Nor does the Amended Complaint allege this information with respect to the individualized services that Plaintiff, himself, performed in his role as an Amazon Flex Driver. Therefore, without a more developed factual record, and arguments from the parties that pertain to each of the *Singh* factors, the Court is not prepared to rule on whether Plaintiff belongs to a "class of workers engaged in . . . interstate commerce." 9 U.S.C. § 1. That determination, here, is premature.

In addition, Defendant cites to the Eleventh Circuit's decision in *Hill v. Rent-A-Center*, in support of its position that Plaintiff did not engage in interstate commerce as an Amazon Flex Driver. That case is inapposite. There, the Eleventh Circuit was required to determine if the plaintiff, an account manager "who as part of his job duties transport[ed] merchandise across the Georgia/Alabama border," qualified as a transportation worker who engaged in interstate commerce. *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005). In answering this question in the negative, the Eleventh Circuit explained that the plaintiff, an account manager at

---

[5] Plaintiff references *Waithaka v. Amazon.com, Inc.,* 404 F. Supp. 3d 335 (D. Mass. Aug. 20, 2019), to support the fact that he belongs to a class of transportation works that engage in interstate commerce. In that case, the court determined that the plaintiff, who also provided transportation services for Amazon, fell under the FAA's residual clause exemption in § 1. However, the same result is not warranted here. Indeed, the plaintiff, there, alleged that he was a "last-mile driver" who, despite never crossing state lines, transported goods that travelled through various distribution centers located throughout the United States. In finding that the residual clause exemption applied, the court reasoned that, because the goods, themselves, travelled across state lines, and the plaintiff participated in the continuation of the movement of those interstate goods, he was an exempt worker. However, unlike the plaintiff in *Waithaka*, Plaintiff, here, alleges that he delivered goods from local warehouses in New Jersey, without asserting that the goods ever travelled through warehouses in different states. Thus, the court's reasoning in *Waithaka* is distinguishable on these grounds.

a car rental business, was not a "transportation worker," and that his transportation activities were "incidental" to his main job duties. *Id*. Based on the Eleventh Circuit's reasoning in *Hill*, Defendant contends that the FAA's residual clause exemption is inapplicable, because Plaintiff was hired to perform "local services." Therefore, even if he transported goods across state lines, Defendant contends that such activities are incidental and insufficient to exempt Plaintiff from the FAA's coverage.

However, the Third Circuit rejected Defendant's exact argument and distinguished *Hill* in *Singh*:

> However, the Eleventh Circuit was express that the residual clause of § 1 did not apply in *Hill* because the employee at issue—an account manager at Rent-A-Center—[was] not a transportation industry worker. This was premised on the fact that the account manager's transportation activities were incidental. The opposite is true here—if anything is clear, it is that [the plaintiffs'] transportation activities are more than incidental. It is the extent to which their activities constitute engagement in interstate commerce that is the question.

*Id*. (internal quotations and citations omitted); *see also Cunningham v. Lyft, Inc.*, No. 19-11974, 2020 U.S. Dist. LEXIS 53653, at *18 (D. Mass. Mar., 27, 2020) (noting a distinction between workers whose transportation services are incidental to their main job responsibilities, and those who instead primarily provide transportation services); *see also Capriole v. Uber Techs., Inc.*, No. 20-2211, 2020 U.S. Dist. LEXIS 90687, at *24-25 (N.D. Cal. May 14, 2020). Thus, because Plaintiff, as an Amazon Flex Driver, was required to transport goods as a part of his main work obligations, *Hill* does not help Defendant's cause.

At bottom, at this stage of the litigation, the Court cannot determine if the FAA's residual clause exemption applies to the parties' dispute. Thus, while the Court will refrain from rendering such a ruling, Defendant can raise this issue, again, following the exchange of limited

discovery, pertaining to whether Plaintiff is, in fact, a member of "a class of transportation workers engaged in interstate commerce or in work so closely related," within the meaning of § 1 of the FAA.

**B.     State Law**

In addition, anticipating that the Court might find that Plaintiff's exempt status cannot be determined at this stage, Defendant argues that the parties can, nevertheless, be compelled to arbitrate this dispute under state law. Def.'s Motion, at 23, 25. In that connection, Defendant contends that, assuming the FAA does not govern this dispute, the Terms of Service contain a survival clause in Section 16, the effect of which allows this Court to compel arbitration, pursuant to either the laws of Washington or New Jersey.[6] *Id*. at 23. Moreover, unlike the FAA, Defendant avers that the applicable state law arbitration statutes do not contain a residual clause exemption, and therefore, Plaintiff can be compelled to arbitrate the instant dispute on alternative grounds. *Id*. at 24, 26. I disagree with Defendant.

The provisions contained in the Terms of Service reveal that the parties bargained for the FAA to govern all disputes related to arbitration. For instance, the express language in Section 11 of the agreement requires the parties to resolve disputes through final and binding arbitration pursuant to federal law, providing: "the Federal Arbitration Act and applicable federal law will govern any dispute that may arise between the parties." *Id*., Ex. A, § 11(j). This requirement is reiterated in Section 12 of The Terms of Service, which provides that the contract's terms and provisions shall be interpreted under Washington law, "except for Section 11 of this Agreement,

---

[6]     On July 17, 2020, Defendant submitted a letter of supplemental authority referencing *Arafa v. Health Express Corp.*, 2020 N.J. LEXIS 807 (2020). There, the New Jersey Supreme Court held that, if an arbitration agreement is determined to be exempt from the FAA's coverage on the basis of the statute's residual clause, arbitration may be compelled under the New Jersey Arbitration Act.

which is governed by the Federal Arbitration Act and applicable federal law." *Id.*, Ex. A, § 12. Indeed, the Terms of Service include multiple provisions which establish that the parties intended for the FAA to govern the arbitration of their disputes. *See Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015) (holding that "the primary goal of contract interpretation is always to 'enforce contracts as the parties intended.'") (quoting *Pacifico v. Pacifico*, 190 N.J. 258 77 (N.J. 2007)).[7]

Here, while Defendant contends that the parties can be compelled to arbitrate this dispute pursuant to state law, the Court must first determine that Plaintiff is an exempt transportation worker under the FAA, before proceeding to address whether arbitration can be compelled on an alternative basis. That issue, for the reasons set forth above, remains an open question. Indeed, without resolving that question, Defendant's alternative state law arguments, at this particular stage of the litigation, are not ripe for the Court to adjudicate.[8] *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594 (3d Cir. 2004) (ordering the parties to arbitrate under state law, after first concluding that their arbitration agreement was exempt under the FAA); *see also Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1201 (W.D. Wash. 2019) (addressing whether the parties' agreement was enforceable under state law, after first making an affirmative finding that

---

[7] The Court recognizes that the Terms of Service contain a survival clause stating as follows: "[i]f any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present and that any partially valid and enforceable provisions be enforced to the fullest extent permissible under applicable law." *Id.*, Ex. A, § 16. However, the Court does not address the effect of this provision on the parties' agreement to arbitrate, as Plaintiff's exempt status under § 1 of the FAA has not been determined. Indeed, in the absence of such a finding, the consideration of this provision is premature.

[8] Defendant's arguments under state law require an application of principles of contract interpretation, and an examination of various public policy issues under Washington and New Jersey state law, none of which needs to be addressed in the event that the FAA is applicable to this suit.

the plaintiff was an exempt transportation worker under the FAA); *Waithaka,* 404 F. Supp. at 343 (finding that the plaintiff fell within the transportation worker exemption, before proceeding to resolve the defendant's state law arguments); *Cunningham*, 2020 U.S. Dist. LEXIS 53653, at *20 (considering whether arbitration can be compelled under state law, after holding that the parties' arbitration contract was exempt from the FAA).

If, after discovery, the Court concludes that the parties' arbitration agreement is exempt from the FAA, Defendant may, again, move to compel arbitration under state law arbitration statutes, and further address which state law applies, *i.e.*, Washington or New Jersey.

C. **Punitive Damages**

As a final matter, Defendant argues that Plaintiff's request for punitive damages should be stricken from the pleadings. In the Amended Complaint, Plaintiff asserts four causes of action against Defendant, including three violations under the WPL and WHL (Counts I-III), and one civil conversion claim (Count IV). Moreover, in each Count, Plaintiff requests an award of punitive damages.

Here, as Plaintiff concedes, the WPL and WHL do not provide for punitive damages. Therefore, his request for such an award in Counts I-III is stricken from the Amended Complaint. *See Ferreras v. Am. Airlines, Inc.*, No. 16-2427, 2017 U.S. Dist. LEXIS 45697, at *10 (D.N.J. Mar. 27, 2017) ("It is now well-settled law that the relief available for a cause of action concerning an alleged failure to pay overtime wages pursuant to the NJWHL . . . does not provide for . . . punitive damages.") (collecting cases); *Merlo v. Fed. Express Corp.*, No. 07-4311, 2010 U.S. Dist. LEXIS 56108, at *37 (D.N.J. June 7, 2010) ("[C]auses of action arising under New Jersey's employee protection statutes and their implementing regulations are limited to the wages owed under the governing provisions; statutory and punitive damages are not

recoverable.") (citation omitted); *Kronick v. Bebe Stores, Inc.*, No. 07-4514, 2008 U.S. Dist. LEXIS 74967, at *8 (D.N.J. Sept., 29, 2008) ("The Wage Payment Law does not provide for statutory or punitive damages") (citation omitted); *see also Qu Wang v. Fu Leen Meng Rest. Liab. Co.*, No. 16-08772, 2018 U.S. Dist. LEXIS 29377, at *12-13 (D.N.J. Feb. 13, 2018) (citations omitted)*; Ramirez v. Gromitsaris*, No. 13-2371, 2013 U.S. Dist. LEXIS 78004, at *3 (D.N.J. June 3, 2013); *Sternadori v. SCS Healthcare Mktg.*, No. 05-3679, 2007 U.S. Dist. LEXIS 15745, at *16 (E.D. Pa. Mar. 6, 2007).

Although a litigant can seek to recover punitive damages on the basis of a civil conversion claim, Plaintiff's request in Count IV must be stricken from the Amended Complaint. In New Jersey, to establish a claim for punitive damages, a litigant must allege "that . . . the defendant's acts or omissions . . . were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." *See* N.J.S.A. 2A:15-5.12. "Actual malice" is defined as "an intentional wrongdoing in the sense of an evil-minded act," while "[w]anton and willful disregard" include "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. 2A:15-5.10. Negligent, or even grossly negligent, conduct cannot form the basis of a punitive damages claim. *See Smith v. Whitaker,* 160 N.J. 221, 242 (1999).

Here, Plaintiff's civil conversion claim is based on his alleged misclassified status as an independent contractor, and Defendant's resulting failure to remit earned "wages and tips" as required under various wage labor laws. Am. Compl., ¶¶ 23, 56. However, although Plaintiff seeks an award of punitive damages on these grounds, nowhere in the Amended Complaint does he assert that Defendant's alleged wrongful conduct involved actual malice. Nor does Plaintiff

plead that Defendant engaged in the kind of behavior which amounts to a "wanton and willful disregard" of his rights under the law. Rather, Plaintiff, for the first time, in his opposition papers, maintains that Defendant's alleged behavior rises to a level which warrants punitive damages. But, it is well established that the pleadings cannot be amended through the arguments set forth in a litigant's briefs. *See Pennsylvania ex rel. Zimmerman v. Pepsico*, 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Significantly, in the absence of such allegations, the Court cannot find that Defendant intentionally, as opposed to negligently or mistakenly, misclassified Plaintiff as an independent contractor to avoid compensating him. Thus, Plaintiff's punitive damages request in Count IV is dismissed without prejudice.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's motion is **GRANTED** in part and **DENIED** in part as follows: (1) the motion to strike punitive damages is **GRANTED**, and (2) the motion to compel arbitration is **DENIED** without prejudice. Defendant may again move to compel, if appropriate, after discovery on the issue whether Plaintiff falls within the transportation worker exemption set forth in § 1 of the FAA.

Date: July 28, 2020                                               /s/ Freda L. Wolfson
                                                                         Hon. Freda L. Wolfson
                                                                         U.S. Chief District Judge