*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT HARPER,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES INC., *et al.*,<br><br>    Defendants. | Civil Action No. 19-21735 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

  Plaintiff Robert Harper ("Plaintiff") filed this action against Defendant Amazon.com Services, Inc. ("Defendant" or "Amazon"), alleging that Defendant (i) misclassified him and other similarly situated New Jersey Amazon Flex drivers as independent contractors, rather than employees; and (ii) failed to remit minimum wage and overtime compensation, as well as customer tips, in violation of various New Jersey wage labor laws. In addition, Plaintiff asserts a civil conversion claim against Defendant and seeks an award of punitive damages. After the Third Circuit remanded this matter, Defendant renews its motion to dismiss the Amended Complaint and compel arbitration under the Federal Arbitration Act ("FAA"), arguing that the arbitration clause in a contractual agreement that the parties executed is binding upon Plaintiff; in the alternative, Defendant contends that Plaintiff should be required to arbitrate this dispute under Washington or New Jersey arbitration statutes.

  For the reasons set forth below, Defendant's motion is **GRANTED**, and Plaintiff's claims must be arbitrated under state law.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise noted, the following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for the purpose of this motion.

### A.   Factual Background

Amazon offers various products that customers can purchase on a nationwide basis through Amazon's website or a smartphone application. Declaration of Manuela Ajayi (dated January 24, 2020) ("Ajayi Decl."), ¶ 4; Amended Complaint ("Am. Compl."), ¶ 21. Amazon contracts with individual drivers ("Amazon Flex Driver(s)") through a smartphone application program called Amazon Flex; these drivers use their personal vehicles to deliver the products that consumers purchase from Amazon. Ajayi Decl., ¶ 5.

On April 24, 2019, Plaintiff registered to work as an Amazon Flex Driver through the Amazon Flex application. *Id.* ¶ 13. To sign up, Plaintiff was required to download the application on his smartphone, create an account, and accept the "Amazon Flex Independent Contractor Terms of Service" ("Terms of Service" or the "Agreement") after twice clicking on a button that read "I AGREE AND ACCEPT." *Id.* ¶ 6. Prospective Amazon Flex drivers, like Plaintiff, could not agree to the Terms and Conditions page without first scrolling to the bottom of the agreement on the Amazon Flex application.

The first page of the Terms of Service contains a section in capital letters indicating that the agreement contains an arbitration provision: "YOU . . . AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN INDIVIDUAL BASIS THROUGH **FINAL AND BINDING ARBITRATION**, UNLESS YOU OPT OUT OF ARBITRATION WITHIN 14 CALENDAR DAYS OF THE EFFECTIVE DATE OF THIS AGREEMENT[.]" *Id.* ¶ 6, Ex. A (emphasis in original). Section 11 of the Terms of Service sets forth the arbitration agreement in

full, requiring the arbitration of all disputes arising from the prospective driver's relationship with

Amazon:

> SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES.

*Id.*, Ex. A, § 11(a).

Section 11 of the Terms of Services also includes a class waiver which requires all Amazon

Flex Drivers to arbitrate potential disputes against Amazon on an individual basis: "ANY

DISPUTE RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN

INDIVIDUAL BASIS AND NOT ON A CLASS OR COLLECTIVE BASIS . . . . THIS

AGREEMENT DOES NOT PROVIDE FOR, AND THE PARTIES DO NOT CONSENT TO,

ARBITRATION ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS." *Id.*, Ex. A, §

11 (b)(e). The Terms of Service further provide that, "NO ARBITRATOR SELECTED TO

ARBITRATE ANY DISPUTE BETWEEN THE PARTIES IS AUTHORIZED TO ARBITRATE

ANY DISPUTE ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS." *Id.*, Ex. A, §

11(f).

The Terms of Service state that the FAA and federal law govern the arbitration agreement

in Section 11: "[t]he parties agree that the Federal Arbitration Act and applicable federal law will

govern any dispute that may arise between the parties." *Id.*, Ex. A, § 11(j). In addition, the

agreement includes a section entitled "governing law," which provides that Washington law is

applicable to the remaining provisions: "[t]he interpretation of this Agreement is governed by the

law of the state of Washington without regard to its conflict of law principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law." *Id.*, Ex. A, § 12. A survival clause is contained in Section 16 of the Terms of Service, stating that "[i]f any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present . . . . " *Id.*, Ex. A, § 16.

Above the "I AGREE AND ACCEPT" button, the Terms of Service explain that Amazon Flex Drivers are permitted to submit a one-sentence email within two-weeks from the date of acceptance, to opt out of the agreement's arbitration provision. In particular, the Terms of Service state: "WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. If you wish to opt out of this arbitration agreement—meaning, among other things, that you and Amazon would be free to bring claims against each other in a court of law—you can opt out by sending an email to [Amazon]." *Id.*, Ex. A, § 11(k). Plaintiff, here, did not choose to opt out of arbitration.

On April 24, 2019, Plaintiff clicked on the "I AGREE AND ACCEPT" button two times.[1] On the first occasion, Plaintiff clicked on the button to accept the Terms of Service, after scrolling through the entire agreement. *Id.* ¶¶ 8-9, 13. Afterwards, Plaintiff was required to click on the I "AGREE AND ACCEPT" button again, to indicate his acceptance to the arbitration provision of the Terms of Service, located on its first page and in Section 11. *Id.*

---

[1]    Plaintiff contends that Defendant has not submitted a signed Terms of Service Agreement, but he does not dispute that he could not have registered to work as an Amazon Flex Driver, without having first agreed and accepted the terms of the contract, including the arbitration clause in § 11.

**B.      Procedural History**

On November 13, 2019, Plaintiff filed the instant action (*Harper I*) against Defendant in the Superior Court of New Jersey, Mercer County. On December 20, 2019, Defendant removed the action to this Court on the basis of diversity jurisdiction. On January 7, 2020, Plaintiff filed a First Amended Complaint ("Amended Complaint" or "FAC"). In the FAC, Plaintiff alleges that Defendant misclassified him and other New Jersey Amazon Flex Drivers as independent contractors, failing to provide overtime compensation, in violation of the New Jersey Wage Payment Law ("NJWPL") and the New Jersey Wage and Hour Law ("NJWHL"). Plaintiff also asserts a civil conversion claim against Defendant, and seeks an award of punitive damages.

Previously, Amazon moved to compel arbitration of these claims, or, in the alternative, to dismiss Plaintiff's claims against "Amazon Flex" and strike Plaintiff's request for punitive damages. ECF No. 5. On July 28, 2020, the Court granted Amazon's motion to strike Plaintiff's request for punitive damages and denied without prejudice Amazon's motion to compel arbitration, finding that discovery is necessary on "the issue whether Plaintiff falls within the transportation worker exemption set forth in § 1 of the FAA." ECF No. 24 ("Prior Opinion"). Pursuant to the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract" shall be valid and enforceable. 9 U.S.C. § 1. Nevertheless, § 1 of the FAA, which is commonly referred to as the residual clause exemption, provides, in pertinent part: "but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id.* In construing the scope of § 1's exclusion, the Third Circuit has held that, pursuant to the rule of *ejusdem generis*,[2] the residual clause of this

---

[2]      "The '*ejusdem generis*' rule is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their

provision includes those classes of workers "'who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it.'" *See Singh v. Uber Techs, Inc.*, 939 F.3d 210, 220 (3d Cir. 2019) (quoting *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers of America, (U.E.) Local 437*, 207 F.2d 450, 452 (3d Cir. 1953)). In denying Amazon's motion to compel, the Court also declined to decide Amazon's alternative request to compel arbitration under New Jersey and Washington state law at that time. Prior Opinion, 14-16. Amazon appealed the Court's order to the Third Circuit, *see* 9 U.S.C. § 16(a)(1)(B), which issued the decision discussed *infra*. ECF No. 31.

While Amazon's motion to compel arbitration was pending in *Harper I*, Plaintiff filed a separate complaint, which he subsequently amended, against Amazon. *Harper v. Amazon.com Servs., Inc.*, No. 20-9771 (D.N.J. Apr. 21, 2021) ("*Harper II*"). In *Harper II*, Plaintiff alleges that Amazon terminated him, as of August 14, 2019, prior to filing *Harper I*, in retaliation for filing internal complaints about Defendant's alleged failure to pay him his full wages and tips, which violated the NJWPL. In September 2020, Amazon moved to dismiss the claims in *Harper II* as duplicative of *Harper I* or, in the alternative, to compel arbitration or stay the action until the outcome of Amazon's then-pending appeal in *Harper I*. *Harper II*, ECF No. 14. In April 2021, the Court issued a Letter Order ("*Harper II* Letter Order") staying *Harper II* pending the Third Circuit's decision and also deciding several issues relating to the validity of the arbitration provision. ECF No. 19 ("*Harper II* Letter Order") at 4, 8. Specifically, the Court held that the arbitration agreement covers Plaintiff's NJWPL claim and New Jersey law does not require a specific reference to the statute, reasoning that New Jersey courts "have routinely found similar language in other arbitration clauses sufficiently broad to cover statutory claims." *Id.* at 6–7. The

---

widest extent, but are to be held as applying only to persons or things in the same general kind or class as those specifically mentioned." *United States v. Walasek*, 527 F.2d 676, 679 (3d Cir. 1975).

Court also rejected Plaintiff's argument that the arbitration agreement was invalid because it did not expressly inform Plaintiff that he was waiving his right to a jury trial. *Id.* at 7–8. The Court held that the arbitration agreement is valid under New Jersey law, finding that "[t]wice the arbitration agreement makes clear that an arbitration proceeding is different from, and would take place in lieu of, a court proceeding." *Id.* at 8.

On September 8, 2021, the Third Circuit vacated this Court's decision in *Harper I* and remanded for this Court to "determine the arbitrability of Harper's claim against Amazon under applicable state law." *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 291 (3d Cir. 2021). The Third Circuit held that courts must consider whether state law provides alternative grounds for enforcement of an arbitration agreement before initiating discovery regarding the application of the FAA. *Id.* at 294–96. According to the Third Circuit, the FAA does not preempt state laws that independently provide for the enforcement of arbitration agreements, and the Amazon Flex Terms of Service could plausibly be read to require arbitration of all disputes, regardless of whether the FAA applies. *Id.* at 293–94. The Third Circuit announced a "three-part framework" for the analysis of disputes regarding arbitrability under § 1 of the FAA, and remanded the case for this Court to apply that framework. *Id.* at 296–97.

As to that framework, a divided panel held that a court facing an arbitrability dispute in a case such as this one must proceed as follows: (1) consider, based on the face of the complaint and related documents alone, whether the FAA governs or whether the residual clause applies; (2) if the answers to those questions are "murky," consider whether the dispute must be arbitrated under applicable state law; and (3) if state law does not compel arbitration, go back to the FAA for limited discovery. *Id.* at 296. The stated logic for resolving state law arbitrability before turning to "questions of fact and discovery" under the FAA is that doing so "honors the principles of

federalism" while preventing "delays, costs, and uncertainty," since "the parties might still have an enforceable agreement to arbitrate under state law." *Id.* at 294. The majority also explained that FAA fact-finding "can always come later." *Id.* at 296. This conclusion appears to center on doubt regarding "the judicially created presumptions atop both §§ 1 and 2 of the FAA," as well as a desire to place "everyone back to the starting line in the text of the law." *Id.* at 297-98 (Matey, J., concurring).

On remand, Amazon filed a renewed motion to compel arbitration or, in the alternative, to strike Plaintiff's request for punitive damages. *See* ECF No. 45. Amazon also moved to stay proceedings pending the U.S. Supreme Court's decision in *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1787 (2022), in which the Court considered whether airline cargo loaders fall within the § 1 exemption to the FAA. *See* ECF No. 50; *see also* ECF Nos. 52–53.

On June 6, 2022, the Supreme Court decided *Saxon*, and on that same day, this Court denied Amazon's stay motion as moot and directed Amazon to file a motion to compel arbitration within 30 days in light of the Supreme Court's decision in *Saxon*. *See* ECF No. 55. On July 6, 2022, Amazon filed the instant motion, and on August 1, 2022, Plaintiff filed opposition.

## II.   **STANDARD OF REVIEW**

The FAA "reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.' " *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). Moreover, "[b]ecause 'arbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be

predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Under the FAA, a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*; *see also* 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). The "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.' " *Kirleis*, 560 F.3d at 160 (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

When evaluating whether a valid arbitration agreement exists, a court must initially determine whether to apply a Rule 12(b)(6) motion to dismiss standard or a Rule 56 summary judgment standard to a party's motion to compel arbitration. *Guidotti*, 716 F.3d at 771-76. To make that determination, courts in the Third Circuit apply the following framework:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon in the complaint," that certain of a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Id.* at 776 (citations omitted). "The centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Singh*, 939 F.3d at 218 (citing *Guidotti*, 716 F.3d at 774-76).

Here, Plaintiff explicitly relies on the Amazon Flex Independent Contractor Terms of Service in the Amended Complaint, and therefore, the Court may consider it in evaluating the Amazon's motion. The Court, therefore, can determine the applicability of the arbitration agreement in Section 11 of the Terms of Service, and applying the Rule 12(b)(6) standard is appropriate.

## III.   DISCUSSION

### A.   Section 1 of the FAA

After remand, the parties continue to dispute whether Plaintiff is exempt from the FAA's coverage; Amazon argues on its renewed motion that Plaintiff should be compelled to arbitrate his claims pursuant to the FAA. Although this Court previously held that it could not resolve this question without discovery, Amazon requests that the Court reconsider that ruling in light of the Third Circuit's guidance and the Supreme Court's decision in *Saxon*. Neither the Third Circuit's guidance in this case nor the Supreme Court's holding in *Saxon*, however, provide a basis for the Court to definitively find that Plaintiff is, or is not, a transportation worker who falls within the FAA's residual clause exemption. Rather, for substantially the same reasons as discussed in the Prior Opinion, I cannot make such a determination, at this stage of the litigation.

First, in vacating the Court's Prior Opinion, the Third Circuit did not substantively address Plaintiff's exempt status under the FAA. The Third Circuit's decision focused on state law arbitrability, finding that when the FAA exemption analysis produces "murky answers," state law arbitration questions must be resolved before turning to questions of fact and discovery. *Harper*,

12 F.4th at 296. In that regard, the Third Circuit remanded the case to this Court, because in directing the parties to conduct limited discovery, the Court did not consider whether state law compelled arbitration of this dispute.

With respect to § 1 of the FAA, the Third Circuit simply confirmed this Court's explanation that the exemption inquiry "asks a court to look to classes of workers rather than particular workers." *Id.* at 293 (quoting *Singh v. Uber Techs., Inc.*, 939 F.3d at 227). Further, the Third Circuit explained that the exemption inquiry turns on multiple factors informing the sort of "work so closely related" to interstate or foreign transportation[.]." *Id.* (quoting *Singh*, 939 F.3d at 227–28). Again, consistent with that explanation, the Prior Opinion noted that a district court should consider "various factors" when determining whether a transportation worker falls within the FAA's residual clause exemption, including, for example, the following list of non-exhaustive resources and materials: "the contents of the parties' agreement(s), information regarding the industry in which the class of workers is engaged, information regarding the work performed by those workers, and various texts—*i.e.*, other laws, dictionaries, and documents—that discuss the parties and the work." Prior Opinion, 10 (quoting *Singh*, 939 F.3d at 227–28). And, finally, the Third Circuit identified that "where the scope of the class of workers at issue cannot be determined by examining the nature of the work performed by the class, and by comparison to the rail and sea industries specified by Congress, 'limited discovery' 'restricted' to facts about the class of workers may be ordered." *Harper*, 12 F.4th at 293 (quoting *Singh*, 939 F.3d at 218–19). In that regard, the Third Circuit actually validated this Court's ruling that limited discovery was necessary based on the allegations of the Amended Complaint:

> the District Court held Harper met the *Singh* standard for discovery. Following that path is **<u>understandable</u>**, and discovery may indeed show whether Harper belongs to a class of workers engaged in foreign or interstate commerce in the same way as seamen and railroad workers.

*Id.* at 293–94. Thus, Amazon's argument that the Court should find the § 1 exemption inapplicable based on the Third Circuit's commentary is unpersuasive.

As for *Saxon*, while the Supreme Court's decision provides guidance and insight into how a district court should assess and evaluate § 1's exemption, on a factual record, the ruling does not change this Court's prior determination. There, the Supreme Court considered whether an airline ramp supervisor who frequently loaded and unloaded commercial cargo on and off interstate airplanes was in a class of transportation workers engaged in interstate commerce within the meaning of § 1 of the FAA. *Saxon*, 142 S. Ct. at 1787. In answering that question, the Court first defined the relevant "class of workers." *Id.* at 1788. Rejecting a broad class encompassing all "airline employees," the Court held that the relevant class is defined by what the plaintiff does, not the work its employer undertakes more generally. *Id.* As such, the Court explained that Saxon belongs to a "class of workers who physically load and unload cargo on and off airplanes on a frequent basis." Next, the *Saxon* Court considered whether that class of airplane cargo loaders is "engaged in foreign or interstate commerce" under § 1. *Id.* at 1789. Answering that question in the affirmative, the Court noted that a person who "loads cargo on a plane bound for interstate transit is intimately involved with the commerce (*e.g.*, transportation) of that cargo." *Id.* at 1790. Put simply, the Court found that because that activity "'is so closely related to interstate transportation as to be practically a part of it,'" the class of workers in *Saxon* was, "as a practical matter, part of the interstate transportation of goods." *Id.*

Turning to the present dispute, Amazon submits that Plaintiff belongs to a class of "local delivery drivers." In support of this position, Amazon highlights allegations in the Amended Complaint that Plaintiff was only given two hours to make his deliveries and that the Terms of Service requires Amazon Flex drivers to use their own modes of transportation. Further, Amazon

submits that Plaintiff has never disputed that he was a local delivery driver engaged to make only short-distance deliveries. Although Plaintiff alleges that "he was engaged in interstate commerce" while working for Amazon because he "was actually engaged in delivering packages across state lines," Amazon maintains that this argument fails for two reasons: (1) Plaintiff's position considers only the work he performed, not the work performed by the class of transportation workers to which he belongs, and (2) bare allegations of occasional or incidental transportation in interstate commerce is insufficient.

Despite Amazon's best efforts, however, *Saxon* only strengthens the Court's prior ruling that no determination, at this stage, can be made as to whether the FAA's residual clause exemption applies to Plaintiff without limited discovery. Indeed, unlike the parties, here, the parties in *Saxon* conducted limited discovery into Plaintiff's job duties. Based on that discovery, the Supreme Court reasoned that the plaintiff's work "<u>frequently</u> requires her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." *Saxon*, 142 S. Ct. at 1787 (emphasis added). As a result, the Supreme Court found it "plain that airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods[,] because they "form 'a class of workers engaged in foreign or interstate commerce.'" *Id.* at 1789. Contrastingly, the Court, here, does not have the benefit of discovery and a more developed record. Relying solely on the pleadings, Plaintiff avers that he engaged in interstate travel as an Amazon Flex Driver. For example, Plaintiff alleges that "Plaintiff and other class members retrieved packages from Amazon warehouses located in the state of New Jersey. Plaintiff and other class members delivered those packages to locations in the [s]tate of New Jersey and across state lines to locations in the State of New York." Am. Compl., ¶ 34(a)-(b). As explained in the Prior Opinion, these allegations

sufficiently create a factual dispute as to whether § 1 applies, which effectively precludes the Court from compelling arbitration based on the FAA. *Saxon* does not teach otherwise. Accordingly, the Court finds that its inquiry under the FAA continues to yield only murky answers.

**B.      State Law**

A lack of clarity on the FAA exemption, however, does not end the analysis. Rather, the Court moves to step two of the framework pronounced by the Third Circuit. I assume § 1 applies, remove the FAA from the agreement, and ask whether the dispute must be arbitrated under applicable state law.

As a threshold matter, however, I must determine whether state law, in the first instance, even governs Section 11 of the Terms of Service, and if so, whether Washington or New Jersey law applies. In this connection, Amazon contends that the Terms of Service contain a survival clause in Section 16, the effect of which allows this Court to compel arbitration, pursuant to either the laws of Washington or New Jersey. In response, Plaintiff argues that in paragraph 12, the Terms of Service clearly state that Section 11 is "governed by the Federal Arbitration Act and applicable federal law," not state law. According to Plaintiff, the Terms of Service are silent as to the governing law of Section 11 in the event that the FAA does not apply. If the parties intended that New Jersey or Washington law apply in the place of the FAA, Plaintiff posits that the contract should have expressly provided for that result.

As to this initial question, the First Circuit's decision in *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 13 (1st Cir. 2020), *cert. denied*, 210 L. Ed. 2d 928, 141 S. Ct. 2794 (2021), *reh'g denied*, 210 L. Ed. 2d 1001, 141 S. Ct. 2886 (2021), is persuasive on this discrete issue. There, the appellate panel interpreted the same Terms of Service at issue here, finding that Washington state law should apply if the FAA does not. *Waithaka*, 966 F.3d at 27.  Although the First Circuit agreed

14

with the plaintiff that Amazon "could have specified more clearly what law applies to the dispute resolution section when the FAA is inapplicable," the appellate court emphasized the agreement's governing law and severability provisions. Here, as in *Waithaka*, the governing law section reads: "[t]he interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law." On the other hand, the severability provision states that "[i]f any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present and that any partially valid and enforceable provisions be enforced to the fullest extent permissible under applicable law." Given that the FAA is considered removed from the Terms of Service by virtue of the Third Circuit's novel framework announced in this matter,[3] the portion of the governing law section which states that the "FAA and applicable federal law" govern the dispute resolution section of the Agreement is severed. Likewise, the portion of the dispute resolution section stating that "the Federal Arbitration Act and applicable federal law [will] govern any dispute that may arise between the parties" is also severed. Indeed, *Harper* itself suggests the possibility of such a result on remand. *Harper*, 12 F.4th at 295 ("Equally plausible is a reading that creates an obligation to arbitrate all disputes and a separate, possibly severable, choice of federal law.")

---

[3]      I note, however, that unlike in *Waithaka*, where the FAA was found inapplicable, the FAA has not been ruled unenforceable in this case. Rather, according to the Third Circuit's framework, if the court's analysis of the FAA's transportation worker exemption does not produce a clear answer, the court simply "assume[s] that § 1 applies, taking the FAA out of the agreement." *Harper*, 12 F.4th at 296. Although the Court appreciates the Third Circuit's desire to promote the goals of arbitration and efficiency of the litigation, this framework appears to ignore a basic tenet of common law contractual interpretation—to effectuate the plain language of the agreement. That said, the Court applies the framework as instructed by the Third Circuit.

What remains is an express choice of Washington law to govern the "interpretation of the Agreement."[4] Indeed, that the FAA might be inapplicable does not mean that "all state law about arbitration vanishes." *Harper*, 12 F.4th at 295. Rather, it would simply render the FAA inapplicable on its own terms, "as if the Federal Arbitration Act had never been enacted." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (alteration and quotation marks omitted). As the Third Circuit explained in this case, regardless of the applicability of the FAA § 1 exemption, "the parties still have an agreement to arbitrate, and if federal law does not govern the arbitrability of their contract, some law must." *Harper*, 12 F.4th at 294.

Having found that Washington law applies, I consider whether the arbitration provision is valid and enforceable; I answer that question in the affirmative. Notably, Plaintiff does not dispute that when applying Washington law, the parties would be compelled to arbitrate this dispute. *Otis Hous. Ass'n v. Ha*, 165 Wn.2d 582, 587 (2009) (finding that the party opposing arbitration bears "the burden of showing the arbitration clause is inapplicable or unenforceable."). Indeed, Washington has a "'strong presumption'" in favor of arbitrability, and does not include any exemption for workers engaged in transportation. *Marcus & Millichap Real Est. Inv. Servs. of Seattle, Inc. v. Yates, Wood & MacDonald, Inc.*, 369 P.3d 503, 507 (Wash. Ct. App. 2016); Wash. Rev. Code ch. 7.04A. The existence of a valid agreement to arbitrate is a question of general contract law determined by "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Washington law, a valid contract must have an objective manifestation of mutual assent, sufficiently definite terms, and consideration. *P.E. Sys., LLC v. CPI Corp.*, 289 P.3d 638, 643 (Wash. 2012); *Yakima Cty. (W.*

---

[4] I note that although a choice of law analysis ordinarily is a threshold issue, the choice between Washington and New Jersey law is immaterial in this instance, because as set forth *infra*, arbitration is compelled under either State's laws.

*Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 255 (Wash. 1993). While contract defenses such as fraud, duress, or unconscionability may apply to invalidate arbitration agreements, "[c]ourts must indulge every presumption in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Verbeek Properties, LLC v. GreenCo Envtl., Inc.*, 246 P.3d 205, 207 (Wash. Ct. App. 2010). Here, Plaintiff unquestionably accepted the terms of the Agreement by affirmatively checking a box twice stating that he "AGREE[D] AND ACCEPT[ED]" the Terms of Service. Ajayi Decl. ¶¶ 8, 13; *see Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12*, 858 P.2d at 255 (finding mutual assent where party affirmatively "indicate[s his] acceptance"). In addition, I note that just above the "I AGREE AND ACCEPT" button, the Terms of Service informed Plaintiff of his right to opt out of the arbitration agreement:

> WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. If you wish to opt out of this arbitration agreement—meaning, among other things, that you and Amazon would be free to bring claims against each other in a court of law—you can opt out by sending an email to [Amazon].

Id. § 11(k). As such, the arbitration agreement is valid and enforceable under Washington law, and Plaintiff does not contend otherwise. Rather, Plaintiff insists that New Jersey law should apply.

But, even if New Jersey law were to apply, I find the Agreement's arbitration provision enforceable for the reasons set forth in the Court's *Harper II* Letter Order. Notably, Plaintiff makes the same arguments on this motion that the Court previously found unsuccessful in *Harper II*: (1) the language of the Agreement is not specific enough to constitute a clear and unambiguous waiver of Plaintiff's statutory employment claims and (2) the Agreement does not sufficiently notify Plaintiff that he is giving up his right to a jury trial. Specifically, as to his first argument, Plaintiff again relies on *Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A.*, 773 A.2d 665 (2001) and *Grasser v. United HealthCare Corp.*, 343 N.J. Super. 241 (App. Div. 2001), where the

New Jersey Supreme Court and Appellate Division, respectively, have held that arbitration clauses that lack, in some fashion, express language that the employee is waiving his or her right to bring workplace discrimination claims, do not bar claims under the New Jersey Law Against Discrimination ("NJLAD").

As a policy matter, the Supreme Court of New Jersey has explained that "the affirmative policy of [New Jersey], both legislative and judicial, favors arbitration as a mechanism of resolving disputes." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 92 (2002); *see also Curtis v. Cellco Partnership*, 413 N.J. Super. 26, 34 (App. Div. 2010) ("New Jersey courts favor arbitration as a means of resolving disputes, embracing the federal policy preferring this method of alternative dispute resolution."). For an arbitration clause covering statutory claims to be valid in an employment context, such as Plaintiff's claims for violation of the NJWPL and NJWHL, the clause must meet the three requirements identified in *Moon v. Breathless Inc.*, 868 F.3d 209, 214 (3d Cir. 2017) (finding that an arbitration clause in an employment agreement did not cover the plaintiff's statutory wage-and-hour claims). First, the clause "must identify the general substantive area the clause covers[,]" as in, the clause "should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Moon*, 868 F.3d at 214 (quoting *Garfinkel*, 168 N.J. at 135). Second, the clause "must reference the types of claims waived by the provision." *Id.* This does not mean "the arbitration clause has to identify the specific constitutional or statutory right guaranteeing" access to the courts, but it should "reflect the employee's general understanding of the type of claims included in the waiver, *e.g.*, workplace discrimination claims." *Id.* (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 446-47 (2014); *Garfinkel*, 168 N.J. at 135). Third, the clause "must explain the difference between

18

arbitration and litigation." *Id.* "That is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* (quoting *Atalese*, 219 N.J. at 445).

Here, as this Court ruled in *Harper II*, the arbitration agreement is sufficiently clear to provide a knowing waiver of Plaintiff's right to bring statutory claims in court. The first prong of the *Moon* test—that the agreement must identify the general substantive area that the arbitration provision covers—is satisfied. Unlike the arbitration clause at issue in *Garfinkel*, the arbitration clause, here, explicitly extends to statutory claims which arise out of the employment agreement including the termination of the Agreement, *i.e.*, the termination of Plaintiff's employment. Indeed, the Agreement states that "THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, **OR STATUTE**, ARISING OUT OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT." Ajaya Decl., Ex. A, § 11(a) (emphasis added). As explained in the *Harper II* Letter Order, courts have routinely found similar language in other arbitration clauses sufficiently broad to cover statutory claims. *See Arafa v. Health Express Corp.*, 233 A.3d 495, 509 (N.J. 2020) (finding that plaintiff's statutory wage and hour claims under state law were covered by arbitration clause which provided that "[t]he parties agree that any dispute, difference, question or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration" (emphasis added); *Wigfall v. Denholtz Assocs., Inc.*, No. A-0046-09T1, 2010 WL 5173700, at *4 (N.J. App. Div. Dec. 22, 2010) (finding that plaintiff's NJLAD claims were covered by arbitration clause which provided that all disputes relating in any way to, or arising out of, my application for employment with the Company, my employment with the Company, or the termination of my employment with the Company.").

The second prong of the *Moon* test—that the arbitration provision must reference the types of claims waived—is also met. While Plaintiff points out that the NJWPL and NJWHL are not specifically mentioned in the agreement, *Garfinkel* does not require that an arbitration clause "refer specifically to the [NJLAD] or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights." 773 A.2d at 672. Instead, to pass muster, clause must "provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship" and "reflect the employee's general understanding of the type of claims included in the waiver." *Id.* The Agreement at issue here passes this test. Specifically, as referenced above, the Agreement provided Plaintiff with notice that statutory claims arising out of the employment agreement, including termination of the Agreement, *i.e.*, termination of Plaintiff's employment, are subject to arbitration. Ajaya Decl., Ex. A, § 11(a). Nothing further is required under the second prong.

The third prong of the *Moon* test—that the agreement sufficiently explains the difference between arbitration and litigation—is likewise satisfied. As the Court highlighted in *Harper II*, the arbitration agreement twice makes clear that an arbitration proceeding is different from, and would take place in lieu of, a court proceeding. *See* Ajaya Decl., Ex. A, § 11(k) ("If you wish to opt out of this arbitration agreement—meaning, among other things, that <u>you and Amazon would be free to bring claims against each other in a court of law</u>—you can opt out.") (emphasis added); § 11(a) ("subject to your right to opt out of arbitration, the parties will resolve their claims by final and binding arbitration, <u>rather than in court</u>") (emphasis added); *see also Jaworski v. Ernst & Young U.S. LLP*, 119 A.3d 939, 950 (N.J. App. Div. 2015) (upholding an arbitration clause stating the parties would not "be able to sue in court in connection with a Covered Dispute"). Thus, the Agreement explicitly informs Plaintiff that the arbitration process is different from a court proceeding, no matter that it does not explicitly reference jury trials.

Accordingly, I find that should New Jersey or Washington law apply, the arbitration clause is valid and covers the statutory claims brought by Plaintiff.[5] Plaintiff's claims in the Amended Complaint will be referred to arbitration.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant's motion is **GRANTED**, based on the Court's finding that Plaintiff's claims should be arbitrated under state law.


Dated: December 19, 2022                              /s/ Freda L. Wolfson
                                                      Freda L. Wolfson
                                                      U.S. Chief District Judge

---

[5]     I also note that Plaintiff's argument that the arbitration provision is unenforceable because it violates public policy is unsupported. Plaintiff argues that the Agreement is against public policy because "[e]nforcing the agreement would release Defendant from its obligation to pay 'similarly situated employees' wages under the WPL and WHL." Compelling individual arbitration of Plaintiff's claims, however, does not release Amazon from its obligation to comply with New Jersey's wage-and-hour laws for all covered employees. Rather, the parties substantive wage disputes will be adjudicated in an arbitral forum. Indeed, the only case cited by Plaintiff in support of his position is distinguishable, because that New Jersey Supreme Court case involved a consumer contract of adhesion prohibiting class-wide relief on consumer-fraud claims. *See Muhammad v. Cnty. Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 22 (2006).